**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**ALICE SMITH KELSEY,**

   **Plaintiff,**

**vs.**                                        **Case No. 1:20cv133-CAS**

**ANDREW M. SAUL,
Commissioner of Social
Security,**

   **Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER

This is a Social Security case referred to my predecessor upon

consent of the parties and reference by District Judge Allen C. Winsor,

ECF No. 9, and reassigned by Chief District Judge Mark E. Walker, ECF

No. 18.   The decision of the Commissioner is affirmed.

## I.  Procedural History

On October 18, 2016, Plaintiff, Alice Smith Kelsey, applied for a

period of disability and disability insurance benefits (DIB) pursuant to Title II

of the Social Security Act (Act) with an alleged onset of disability date of

June 3, 2016.   Tr. 40, 198-201, 224.   (Citations to the

Transcript/Administrative Record shall be by the symbol "Tr." followed by a

page number that appears in the lower right corner.)   Plaintiff alleged

disability due to rheumatoid arthritis, pancreatitis, anxiety, igG4 auto immune disorder, chronic stomach pain, chronic feet, ankle, and back pain. Tr. 46, 238.

Plaintiff's claim was denied initially on March 1, 2017, and upon reconsideration on May 22, 2017.   Tr. 40, 111, 126.   On May 31, 2017, Plaintiff requested a hearing.   Tr. 40, 139.   On June 10, 2019, Administrative Law Judge (ALJ) Todd Spangler held a video hearing presiding from Knoxville, Tennessee, with Plaintiff appearing with counsel, in Gainesville, Florida.   Tr. 40, 56-94.   Plaintiff was primarily represented by Jason K. Baril, an attorney, but Stephen Ekblom, also an attorney, appeared at the hearing.   Tr. 40, 59.   Anne B. Thomas, M.S., NCC, testified as an impartial vocational expert.   Tr. 40, 59, 86-93, 307-08 (Resume).

On May 28, 2019, Plaintiff's counsel submitted a pre-hearing memorandum.   Tr. 310-13.   At the outset of the hearing, and in writing prior to the hearing, on June 3, 2019, Plaintiff's counsel informed the ALJ about additional documentation from Matthew J. Cline, DC, and the UF Health Sands Emergency Center-Springhill (UF).   Tr. 40, 60-61, 314-15. The ALJ left the record open for 30 days to allow Plaintiff to provide this

documentation.   Tr. 40, 93.   Documentation from Chiropractic Associates
of Gainesville dated July 13, 2017, through February 25, 2019, was
received and appears as Exhibit 22F, Tr. 40, 846-74.   As noted by the
ALJ, no additional documentation was provided from UF and the record
was closed.   Tr. 40.

On June 26, 2019, the ALJ rendered the decision concluding Plaintiff
has not been under a disability from June 3, 2016, through the date of the
decision.   Tr. 40-50.   On or about June 10, 2019, Plaintiff, by counsel
Jason K. Baril, requested review of the ALJ's decision.   Tr. 194-97.
Thereafter, and as noted by the Appeals Council, Plaintiff submitted
medical records dated June 21, 2017, from Donald W. Scott, M.D.   Tr. 2,
95-98.   On August 6, 2019, Plaintiff's present counsel, Howard D. Olinsky,
filed a brief.   Tr. 316-19.   The Appeals Council also received medical
evidence of record dated September 2, 2019, and September 3, 2019, from
Shands at the University of Florida.   Tr. 2, 8-31.   Regarding the latter
documents, the Appeals Council noted receiving same, but stated the ALJ
decided the case through June 26, 2019, and, as a result, the additional
evidence did not relate to the period at issue, *i.e.*, through June 26, 2019.

Tr. 2.   It was suggested to Plaintiff that if this information was to be considered, the Plaintiff would have to file a new claim.   *Id.*

On April 6, 2020, the Appeals Council denied Plaintiff's request for review.   Tr. 1-7.

On June 8, 2020, Plaintiff filed a complaint requesting judicial review of the Commissioner's final decision.   ECF No. 1.   Both parties filed memoranda of law, ECF Nos. 14 and 17, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings:

1.  "The claimant meets the insured status requirements of the [Act] through September 30, 2022."   Tr. 42.

2.  The claimant has not engaged in substantial gainful activity [SGA] since June 3, 2016, the alleged onset date."   Tr. 43.

3.  "The claimant has the following severe impairments: IgG4-related disease (IgG4-RD); polyarthritis, dyspepsia and anxiety."[1]   *Id.*

    The ALJ also considered Plaintiff's alleged inability to perform work activity due to bilateral enlargement of the lacrimal glands, but determined there was no evidence of Plaintiff receiving treatment for this impairment after 2018.   Tr. 43.   The ALJ rejected Plaintiff's inability to perform work activity due to

---

[1]   The ALJ is not required to identify all impairments that should be considered severe.   *See* Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished); *see also* Mariarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).   Plaintiff does not claim the ALJ omitted a severe impairment.   ECF No. 14.

hypertension because the record showed her blood pressure was within normal ranges when she was medication compliant. *Id.*[2]

The ALJ considered Plaintiff's obesity in accordance with Social Security Ruling (SSR) 19-2p and determined that her obesity, by itself or in combination with other impairments, was not so severe as to prevent her ability to perform work activity. *Id.*

The ALJ further noted that Plaintiff alleged rheumatoid arthritis but the ALJ specifically observed that Plaintiff's rheumatologist, on several occasions, determined there was no evidence Plaintiff had rheumatoid arthritis. *Id.*

Likewise, the ALJ found that Plaintiff's claim of ankle and back pain were not medically determinable impairments. *Id.* Finally, the ALJ concluded that although Plaintiff sought chiropractic treatment twice for right foot pain which she reported began in December 2018, the right foot pain was not a medically determinable impairment. *Id.*

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 43. The ALJ determined that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.06." Tr. 44. In making this determination, the ALJ considered the listing 12.06 "paragraph B" criteria and determined that Plaintiff had *moderate* limitation regarding understanding, remembering, or applying information; *moderate* limitation in interacting with others; *moderate* limitation regarding concentrating, persisting, or maintaining pace, and *moderate* limitation for adapting or managing oneself. Tr. 44-45; *see* 20 C.F.R. Subpt. P. 404, App. 1, §§ 12.06 B., C. The ALJ also determined the evidence did not establish the presence of the

---

[2]   *See generally* <u>Brown v. Astrue</u>, 611 F.3d 941, 955 (8th Cir. 2010) (quoting <u>Brace v. Astrue</u>, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")).

"paragraph C" criteria, *id*.   Tr. 45.   The ALJ specifically stated that "the 'paragraph B' criteria are not a residual functional capacity [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. *Id.*   The ALJ also noted that the mental RFC assessment used at steps 4 and 5 requires a more detailed assessment.[3]   *Id*.

5.   "[T]he claimant has the [RFC] to perform less than the full range of light work as defined in 20 CFR 404.1567(b).   She can lift and carry 20 pounds occasionally and ten pounds frequently.   She can stand, walk and sit for a total of six hours, within an eight-hour workday.   She can occasionally climb ladders, ropes and scaffolds.   She can occasionally stoop and crawl.   She can frequently reach overhead with the right upper extremity.   She should avoid concentrated exposure to extreme cold.   She is limited to performing simple and detailed tasks; no more than occasional contact with coworkers, supervisors and the public and workplace changes should be introduced gradually and infrequently."   Tr. 45; *see* Tr. 87-88 (hypotheticals posed to vocational expert).[4]

---

[3]   The Commissioner's regulations require an ALJ to use the "special technique" dictated by the Psychiatric Review Technique (PRT) in evaluating mental impairments. 20 C.F.R. § 404.1520a(a).   The special technique requires separate evaluations of how the claimant's mental impairment impact the claimant in four broad functional areas. *Id*. § 404.1520a(c)(3)-(4).   The ALJ is required to document the application of the PRT, to discuss the pertinent findings and conclusions based on application of the PRT, and to make specific findings as to the degree of limitation in each of the four functional areas in the written decision.   *Id*. § 404.1520a(e)(4).   An ALJ's failure to complete a PRT, append a PRT to the written decision *or* incorporate the PRT's mode of analysis into the ALJ's findings and conclusions in the written decision, warrants a remand to the Commissioner.   Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005).   Here, the ALJ considered the four functional areas.   Tr. 44-45; *see also* Tr. 119-20 (Exhibit 3A) (On Reconsideration, May 5, 2017, James G. Brown, Ph.D.).   For example, the ALJ gave little weight to Dr. Brown's *none* to *mild* "paragraph B" assessment, finding it inconsistent with Plaintiff's "testimony, her activities of daily living and the longitudinal record, as outlined above." Tr. 47-48, 119.

[4]   The ALJ posed two (2) hypothetical questions to the vocational expert that included the RFC findings.   *Compare* Tr. 87-88 *with* Tr. 45.   The vocational expert

6.   The claimant is unable to perform any past relevant work as a teacher, secondary school at the light exertional skill level with an SVP of seven.   Tr. 48; *see* Tr. 87-88.   (The vocational expert was aware that Plaintiff worked as a math teacher.   Tr. 86-87.)

7.   The claimant was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.   Tr. 48.

8.   The claimant has at least a high school education and is able to communicate in English.   *Id.*   Transferability of jobs is not material to the determination of disability because using the Medical-Vocational Rules (the Grids) as a framework supports a finding that Plaintiff is not disabled whether or not Plaintiff has transferable job skills.   Tr. 49

9.   "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform."   *Id.*   The ALJ determined that if the Plaintiff had the RFC to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.14.   *Id.*   The ALJ determined that Plaintiff's ability to perform all or substantially all the requirements of a full range of light work has been impeded by additional limitations.   As a result, the vocational expert was asked whether jobs exist in the national economy which Plaintiff can perform. The vocational expert testified that Plaintiff can perform several representative jobs at the unskilled, light exertional level, such as

---

identified several jobs Plaintiff could perform.   Tr. 87; *see* Tr. 49.   Counsel asked the vocational expert that if an individual would be off task ten percent of the work day given the two hypothetical questions, would such an individual be able to perform any of the jobs listed by the vocational expert to which vocational expert responded "no."   Tr. 90. Counsel then added: "What if the individual, due to particularly bad physical or emotional health days was absent -- had unscheduled absences twice a month, would they be able to maintain gainful employment?"   Tr. 90-91.   The vocational expert opined "[n]o, not on a sustained basis."   Tr. 91; *see also* Tr. 91-92.

hand packer, production laborer, and production machine operator.[5]   Tr. 49; *see* Tr. 87 (vocational expert opinion regarding available representative jobs).

10. "The claimant has not been under a disability, as defined in the [Act], from June 3, 2016, through the date of this decision." Tr. 50.

## III.   Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.   42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); *see also* Biestek v. Berryhill, _U.S._, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (Substantial evidence "means-and means only-such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" (citations omitted)).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such

---

[5]   "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."   20 C.F.R. § 404.1568(a). Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.   SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).   In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."   20 C.F.R. § 404.1567(b).

relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore, 405 F.3d at 1211. "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[6]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history." Bloodsworth, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

---

[6]   This Court may not reweigh the evidence or substitute its own judgment for that of the Commissioner. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips, 357 F.3d at 1240 (citations omitted).

economy."   42 U.S.C. § 423(d)(2)(A).   A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).   Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 224 (2002).

The Commissioner analyzes a claim in five steps.   20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal the criteria listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[7]

---

[7]   An RFC is the most a claimant can still do despite limitations.   20 C.F.R. § 404.1545(a)(1).   It is an assessment based upon all of the relevant evidence including the claimant's description of limitations, observations by treating and examining physicians or other persons, and medical records.   *Id.*   The responsibility for determining a claimant's RFC lies with the ALJ.   20 C.F.R. § 404.1546(c); *see*

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.   A positive finding at step three results in approval of the application for benefits.   At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.   Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.   If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.   If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R.

---

Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").

§ 404.1520(a)(4)(v).   If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

A claimant bears the burden of proving he or she is disabled and is responsible for producing evidence in support of the claim.   *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

## IV.   Legal Analysis

### Substantial Evidence Supports the ALJ's Determination that Plaintiff is not disabled.

1.

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinion of one-time consulting examiner, Linda Abeles, Ph.D., a licensed psychologist.   Plaintiff also argues the ALJ erred because he "provided for limitations he improperly made up out of whole cloth."   ECF No. 14 at 1.   In short, Plaintiff challenges the ALJ's evaluation of Dr. Abeles' opinion and the ALJ's mental RFC findings.   ECF No. 14 at 12-21.

2.

The ALJ determined Plaintiff retained the RFC to "perform less than

the full range of light work" with several limitations.[8]   Tr. 45; *see supra* at

6.   The ALJ properly considered Plaintiff's work-related limitations from

mental impairments; and the RFC determination is supported by the

record.

The ALJ began the RFC assessment with a discussion of Plaintiff's

allegations pertaining to her inability to perform work activity due to IgG4-

RD, polyarthritis, dyspepsia, and anxiety.   Tr. 46.   The ALJ considered

Plaintiff's hearing testimony and other pre-hearing statements, which

included Plaintiff's daily activities.[9]   Tr. 46, 251-68, 273-80.

The ALJ discussed Plaintiff's physical complaints, including Ig4-RD,

polyarthritis, and dyspepsia, at length beginning in 2015 through 2017.

Tr. 46-47.   Plaintiff was prescribed amitriptyline to address her anxiety

symptoms in August 2016.   Tr. 47.   The ALJ noted:

---

[8]   *See supra* at 10 n.7.

[9]   The ALJ may consider a claimant's daily activities when assessing the credibility of her complaints.   Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i) (providing that daily activities are relevant and can be considered by the ALJ when evaluating a claimant's symptoms); *but see* Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).   A claimant's ability to do some work, even at a low level, "may indicate that she is able to do more work."   Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808 (11th Cir. 2013) (unpublished).

During appointments with her providers, she was oriented to
person, place and time; exhibited normal behavior; had normal
judgment and thought content and had a normal mood and affect
(Exhibits 1F-3F [Tr. 320-58], 10F-12F [449-74], 16F [487-513],
17F [514-66] and 19F-21F [587-845]).   There is no evidence she
received mental health therapy, inpatient psychiatric nor
emergency psychiatric treatment during the adjudicative period.
She testified that, while she has been directed to take her anxiety
medication twice a day, she only takes it once a day.   As the
evidence of record demonstrated that her anxiety was well-
managed, despite her failure to take her medication as directed,
her anxiety is not  so severe as to prevent her from performing
work activity.

Tr. 47.

In part, "[m]edical opinions are statements from acceptable medical

sources that reflect judgments about the nature and severity of [the

claimant's] impairment(s), including [the claimant's] symptoms, diagnosis

and prognosis, what [the claimant] can still do despite impairments, and

[the claimant's] physical or mental restrictions."   20 C.F.R.

§ 404.1527(a)(1).   Opinions on whether a claimant is unable to work or

disabled "are not medical opinions, as described in paragraph (a)(1) of this

section, but are, instead, opinions on issues reserved to the Commissioner

because they are administrative findings that are dispositive of a case; *i.e.*,

that would direct the determination or decision of disability."   *Id.*

§ 404.1527(d).   "[A] statement by a medical source that [the claimant is]

'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." <u>Denomme v. Comm'r, Soc. Sec. Admin.</u>, 518 F. App'x 875, 877-78 (11th Cir. 2013) (unpublished) (quoting 20 C.F.R. § 404.1527(d)(1)).   Such opinions can never be entitled to controlling weight or given special significance.   SSR 96-5p, July 2, 1996, repealed eff. Mar. 27, 2017.

On February 7, 2017, Plaintiff underwent a one-time consultative examination with Dr. Abeles.[10]   Tr. 435-37 (Exhibit 8F).   Plaintiff was referred for a general clinical evaluation with mental status to assess her level of functioning.   Tr. 435.   Plaintiff's educational history included earning an Ed.S. in mathematics.   "Her vocational history includes a 29-year tenure teaching secondary school mathematics in both Alachua and Putnam counties in Florida, a position she left on June 3, 2016 resultant to 'stress.'"   Tr. 436.   Plaintiff told Dr. Abeles that she was mostly able to care for her daily personal needs, although she reported having difficulty removing her shirt.   Her daily activities included watching television,

---

[10]   The opinion of a one-time examiner is not entitled to great weight.   <u>McSwain v. Bowen</u>, 814 F.2d 617, 619 (11th Cir. 1987); *see also* <u>Huntley v. Soc. Sec. Admin.</u>, 683 F. App'x 830, 832 (11th Cir. 2017 (unpublished) ("The [ALJ] need not defer to the opinion of a physician who conducted a single examination because that physician is not a treating physician.") (citations omitted)).

cooking, going to the gym, and attending doctor's appointments.   *Id.*   She
referenced her poor relationship with her estranged sister throughout the
interview.   Tr. 435.   She attempted to control the interview; and her phone
rang repeatedly during the evaluation.   Tr. 436.

Dr. Abeles noted that Plaintiff presented as overweight but "was
nicely dressed and groomed.   There were no visible physical deformities
and her gait appeared to be within normal limits.   No obvious impairments
were evident in her vision, hearing or speech abilities."   *Id.*   Plaintiff "was
fully oriented to time, date and location."   *Id.*

Plaintiff scored 26 out of 30 points on the Montréal Cognitive
Assessment, indicating intact cognitive functioning, and her visual
spatial/executive, naming, attentional, language, and abstraction abilities all
appeared intact.   *Id.*   Dr. Abeles noted that overall, Plaintiff's "presentation
was inconsistent with cognitive impairment," *id.*, but "was consistent with a
personality disorder," but not further specified.   Tr. 437.   (The diagnostic
impression was "unspecified personality disorder."   *Id.*)   Dr. Abeles opined
that Plaintiff's

> psychological condition would not appear to constitute a hindrance
> which would prevent her from obtaining employment; however, her
> personality disorder traits may make it difficult for her to sustain

employment.   The claimant would appear competent to manage any monies to which she may be entitled.   Prognosis for future success in the workplace is judged to be fair.

*Id.*

As noted above, the ALJ considered medical records pertaining to Plaintif's anxiety symptoms.   Tr. 47; *see supra* at 13-14.   A review of these records indicates that Plaintiff continued to deny anxiety and depression at her 2016 and 2017 medical appointments, Tr. 330, 344, 346, 363, 367, 451, 455, 460, 470, 531, 536, 540, and her provider observed normal mood and affect.   Tr. 324, 472, 613.   In March 2018, when Plaintiff went to the emergency room for lightheadedness, she reported walking at least one mile daily and making healthy dietary changes to lose weight. Tr. 767.   Plaintiff exhibited normal mood and affect, Tr. 769, and continued to exhibit normal mood and affect in September 2018.   Tr. 774.

At October 2018 and January and March 2019 appointments with her gynecologist, Plaintiff denied anxiety, depression, and irritability and exhibited normal mood and affect.   Tr. 783-84, 789-90, 797.

As the ALJ noted, *see supra* at 13-14, Plaintiff took her anxiety medication (amitriptyline) once a day, even though it was prescribed for twice a day, but still exhibited normal mood, affect, judgment, and behavior.

Tr. 47, 436-37, 472, 594, 613, 617, 655, 769, 774, 784, 790, 797.   She did not receive mental health treatment beyond medication and routinely denied depression and anxiety symptoms.   Tr. 47, 330, 333, 341, 343, 346, 451, 455, 460, 470, 531, 536, 540, 783, 789, 797.

The ALJ also noted that Plaintiff's daily activities undermined her allegations of disabling symptoms.   Tr. 46; *see supra* at 13 n.9 (appropriate to consider daily activities when evaluating a claimant's subjective complaints).   These daily activities included Plaintiff running a household, driving whenever she needed, shopping in stores, presenting at a gym for strength training and cardio workouts, and traveling to Atlanta with her son to manage her properties.   Tr. 46, 78, 80-82, 85, 436.

The ALJ assigned "little weight to the opinion of" Dr. Abeles and stated:

> [Dr. Abeles'] determination that the claimant has unspecified
> personality disorder is inconsistent with the objective medical
> evidence, which demonstrates that the claimant has been diagnosed
> with (and treated for) anxiety (*See* Exhibits 10F [Tr. 449-52], 11F
> [Tr. 453-64], 17F [Tr. 514-66], and 21F) [Tr. 776-845].   Further,
> [Dr. Abeles] failed to perform any type of functional analysis of the
> claimant's abilities and limitations.   However, weight is given to
> [Dr. Abeles'] determination that the claimant's mental impairment
> would not appear to constitute a hindrance to her ability to obtain
> employment, as it is consistent with the longitudinal record taken as a
> whole.

Tr. 48.

The ALJ considered Dr. Abeles' opinion, weighed it, and explained the reasons for that weight.   Tr. 48.   The record supports the ALJ's determination that Plaintiff had minimal treatment for anxiety and no treatment for (unspecified) personality disorder, *see* Tr. 437.   *Id.*   In fact, Plaintiff did not allege she was disabled because of a personality disorder. The record does not contain independent evidence of a personality disorder; and Dr. Abeles did not explain how she arrived at that diagnosis. The ALJ properly discounted Dr. Abeles' opinion because it was inconsistent with the record as a whole and because it was conclusory. Tr. 48.   Both are valid reasons for discounting a one-time consultant's opinion.   *See generally* Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004).

The ALJ also correctly noted that Dr. Abeles' opinion lacked specific functional limitations.   Tr. 48.   Dr. Abeles stated that Plaintiff may have difficulty sustaining employment because of her personality disorder; however, Dr. Abeles did not specify what functional limitations Plaintiff would have or identify the objective bases for those limitations.   Tr. 438.

Agency regulations provide that the more a medical source presents relevant evidence to support a medical opinion, the more weight the opinion may receive.   20 C.F.R. § 404.1527(c)(3).   In this regard, Dr. Abeles' report is lacking.

3.

The ALJ's RFC determination limited Plaintiff, for example, to performing less than the full range of light work and performing "simple and detailed tasks; no more than occasional contact with coworkers, supervisors and the public at workplace changes should be introduced gradually and infrequently."   Tr. 45; *see supra* at 6.   Substantial evidence supports the ALJ's consideration of the medical opinions of record and RFC determination.

"Conversely, the [ALJ] assign[ed] great weight to the opinion of the consultant at the reconsideration level (Exhibit 3A).   The consultant's determination that the claimant could perform a range of light work with postural, manipulative and environmental limits is consistent with and supported by the objective medical evidence, discussed above."   Tr. 47; *see also* Tr. 121-23 (physical RFC assessment).

The ALJ must articulate the weight given to the medical opinions and

the reasons for that weight.   *See* <u>Winschel v. Astrue</u>, 631 F.3d 1176, 1179

(11th Cir. 2011).   As the finder of fact, the ALJ is charged with the duty to

evaluate all the medical opinions of the record resolving conflicts that might

appear.   20 C.F.R. § 404.1527.[11]   When considering medical opinions,

the following factors apply for determining the weight to give to any medical

opinion: (1) the frequency of examination and the length, nature, extent of

the treatment relationship; (2) the evidence in support of the opinion, such

as "[t]he more a medical source presents relevant evidence to support an

opinion, particularly medical signs and laboratory findings, the more weight"

that opinion is given; (3) the opinion's consistency with the record as a

whole; (4) whether the opinion is from a specialist and, if it is, it will be

accorded greater weight; and (5) other relevant but unspecified factors.   *Id.*

§ 404.1527(b) & (c).

Although an ALJ considers the opinions of State agency medical or

psychological consultants, an ALJ is not bound by their findings.   *Id.*

§ 404.1527(f)(2).   Notwithstanding, state agency consultants are

---

[11]   This provision applies to claims filed before March 27, 2017.   For claims filed after that date, section 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

considered experts in the Social Security disability programs and their

opinions may be entitled to great weight if their opinions are supported by

the evidence in the record.   *Id.* § 404.1527(e)(2)(i).   An ALJ does not give

undue weight to a State agency opinion, even though the state agency

consultant did not review the entire record, where the ALJ, who made the

ultimate determination, had access to the entire record.   *See* Cooper v.

Comm'r of Soc. Sec., 521 F. App'x 803, 807 (11th Cir. 2013) (unpublished).

Here, the ALJ expressly considered and weighed the opinions of the State

agency reviewers and gave those opinions appropriate weight, and, in

some case, less weight when the opinions were less than favorable to

Plaintiff.   Tr. 47-48.   Substantial evidence supports the ALJ's

consideration of the medical evidence, including the State Agency

consultant who determined Plaintiff could perform a range of light work with

limitations.   Tr. 47; *see also* Tr. 121-23.

4.

Using the PRT for assessing the severity of mental impairments, the

ALJ determined that Plaintiff had *moderate* difficulties in all four broad

domains.   Tr. 44-45; *see supra* at 6 n.3.   PRT ratings are not an

assessment of claimant's RFC; rather, they are used to rate the severity of

the claimant's mental impairments at steps two and three of the sequential

evaluation process.   *See* 20 C.F.R. §§ 404.1520(a)(4)(ii)-(iii),

404.1520a(d)(1), (d)(2); *see supra* at 6 n.3.

At step five of the sequential evaluation process, the ALJ accounted

for Plaintiff's *moderate* limitations in the PRT domain of using,

remembering, or applying information by limiting her as provided in the

RFC including the ability to perform simple and detailed tasks.   Tr. 45, 87-

88.   The vocational expert responded that such a person could perform the

light, unskilled work of hand packer, production labor, and production

machine operator.   Tr. 49, 87.   The questions were properly formulated

such that it included Plaintiff's credible mental limitations, so the expert's

testimony that Plaintiff could perform other work is substantial evidence

supporting the Commissioner's decision.   *Id.   See* <u>Phillips</u>, 357 F.3d at

1240 ("A vocational expert is an expert on the kinds of jobs an individual

can perform based on his or her capacity and impairments.").

5.

Plaintiff's argument that the ALJ "played doctor" by rejecting the

personality disorder diagnosis is rejected.   ECF No. 14 at 16.   Aside from

Dr. Abeles, none of Plaintiff's treating sources considered or diagnosed a

personality disorder.   Dr. Abeles did not explain how she arrived at the diagnosis or explain how the impairment would impact her functional abilities.   "The severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection normality." Russell v. Astrue, 331 F. App'x 678, 681 (11th Cir. 2009) (unpublished) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).   The ALJ properly focused on the limited effects of Plaintiff's psychological condition as a whole.

Further, Plaintiff's argument that the ALJ improperly "played doctor" by formulating an RFC without any medical opinions is rejected.   ECF No. 14 at 20.   As noted herein, *see supra* at 10 n.7, the ALJ has the sole responsibility of assessing claimant's RFC, not a medical source such as Dr. Abeles.   20 C.F.R. § 404.1546(c).   Substantial evidence supports the ALJ's RFC determination.

Finally, Plaintiff argues that the ALJ should have further developed the record to obtain a medical opinion.   This argument is rejected. Plaintiff has the burden of proving and producing evidence in support of her claim.   20 C.F.R. § 404.1512; Ellison v. Barnhart, 355 F.3d 1272, 1276

(11th Cir. 2003).   The record is sufficient to support the ALJ's decision and, as a result, an additional consultative examination was unnecessary. *See* 20 C.F.R. § 404.1519a(b).   In addition, Plaintiff has not shown prejudice justifying a remand to the Commissioner for further development of the record.   *See* Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995).

The ALJ properly evaluated the medical opinions of record, including Dr. Abeles' consultative report and opinions contained therein, and properly assessed Plaintiff's RFC.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record; and the ALJ correctly followed the law.   Accordingly, pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **AFFIRMED** and the Clerk is **DIRECTED** to enter judgment for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on February 16, 2021.

s/   **Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**